FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 06, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JENNIE MAE, A.,[1] <br>                     Plaintiff, <br><br>   vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY,[2] <br>                Defendant. | No. 1:19-cv-03061-MKD <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 15, 18 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 15, 18. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 15, and grants Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d). If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On October 27, 2015, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of October 1, 2015. Tr. 119, 245-50. The application was denied initially, and on reconsideration. Tr. 138-46; Tr. 148-54. Plaintiff appeared before an administrative law judge (ALJ) on October 27, 2017. Tr. 42-74. On March 28, 2018, the ALJ denied Plaintiff's claim. Tr. 12-35.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 27, 2015. Tr. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative joint disease of the lumbar spine; L1-2-disc protrusion;

spondylolisthesis; degenerative joint disease (hips and knees); morbid obesity; unspecified mood disorder; and unspecified anxiety disorder. Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then concluded Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can lift/carry 10 pounds frequently and 20 pounds occasionally. She can stand/walk for two hours and sit for six hours during a typical eight-hour workday. She can perform tasks that do not include climbing ladders, ropes, or scaffolds. [Plaintiff] can frequently balance and occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold, heat, vibrations, hazards (such as moving machinery and unprotected heights), and pulmonary irritants (defined as fumes, odors, dust, gases, and poor ventilation). [Plaintiff] must also avoid concentrated exposure to noise and must work in a "very quiet," "quiet," or "moderate" noise intensity level as defined in the DOT. She can understand, remember, and carry out simple, repetitive tasks and adapt to work place changes as would be required of simple, repetitive work, defined as "routine changes." She can have occasional and superficial contact with the general public, supervisors, and co-workers. [Plaintiff] can set goals independently for simple, repetitive task work and complete a workweek without significant interruption from any symptoms.

Tr. 21.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 27. At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there

were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, assembler, escort vehicle driver, and document preparer. Tr. 28. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application though the date of the decision. Tr. 29.

On February 8, 2019, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ properly evaluated the lay witness evidence; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 15 at 2, 18.

# DISCUSSION

## A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons in discrediting her symptom claims. ECF No. 15 at 3-12; ECF No. 19 at 2-4. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms. SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted). "The claimant is not required to show that [her] impairment could reasonably be expected to cause the severity of the symptom [she] has alleged; [she] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v.*

*Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 416.929 (c). The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found Plaintiff's medically determinable impairments could cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  Tr. 22.

### 1. Daily Activities

The ALJ found Plaintiff's daily activities were inconsistent with her alleged mental and physical limitations.  Tr. 23, 25.  A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) the claimant "is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  The ability to care for others without help may undermine claims of totally disabling pain, *id.*, so long as the record identifies the nature, scope, and duration of the care involved and establishes that the care is "hands on" rather than a "one-off" care activity.  *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).  It is well-established that a claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

In support of her finding, the ALJ noted that, despite Plaintiff's reported symptoms of pain, depression, and anxiety (including social phobia and difficulty interacting with others, Tr. 280, 294, 309; self-isolation, Tr. 367, 405; difficulty completing tasks, Tr. 376; limitations in sitting/standing for prolonged periods, following instructions, concentrating for prolonged periods, keeping appointments, using the telephone, and using transportation, Tr. 382-83), Plaintiff was able to attend community college classes (50-minute classes four days/week and 90-minute classes two days/week), complete homework, and earn a criminal justice program certificate; that she was able to go tent camping, go grocery shopping by herself, do the laundry and cleaning, and tend to the needs of a newborn baby (including changing his diapers, feeding him, reading to him, and playing with him); and that she was able to regularly attend substance abuse recovery meetings. Tr. 25. The ALJ reasonably concluded that Plaintiff's engagement in these activities demonstrated she was "not as limited as alleged." Tr. 25; *see Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009); *Molina*, 674 F.3d at 1113 ("[e]ven where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Plaintiff argues that the ALJ failed to demonstrate how her attendance at classes and meetings contradicts her testimony or would be transferable to a work

setting, ECF No. 15 at 4-5; ECF No. 19 at 3-4, and notes that she was absent more than five days in her most recent academic quarter due to pain. ECF No. 15 at 4 (citing Tr. 62). However, Plaintiff's successful completion of an educational program (which required her to routinely attend classes, pay attention during classes, follow instructions, and complete assignments independently), and consistent attendance at recovery meetings (which requires interacting with others), were reasonably interpreted by the ALJ to contradict her alleged limitations, specifically those related to completing tasks, interacting with others, following instructions, concentrating, and keeping appointments. *See, e.g.,* Tr. 47 ("I have a hard time completing daily tasks because I'm in so much pain;"); Tr. 280, 283 (Plaintiff self-reports anxiety keeps her from interacting with others and going places alone); Tr. 285 (Plaintiff self-reports she can only pay attention for 20 minutes); Tr. 314 (Plaintiff self-reports she can only pay attention for five minutes).

Plaintiff also argues that the ALJ failed to cite specific allegations contradicted by her performance of household and childcare obligations. ECF No. 15 at 5. However, on this record, the ALJ reasonably determined that Plaintiff's symptom complaints, including constant and debilitating back pain, Tr. 47, difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing, Tr. 285, and inability to pay attention longer than five minutes,

Tr. 314, were inconsistent with her ability to change, feed, play with, read to, clean up after, and care for her children, as well as perform chores on a sustained basis. Tr. 25. Although the evidence of Plaintiff's daily activities could form the basis of an interpretation more favorable to her, the ALJ's interpretation was rational, and the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (internal quotation marks and alterations omitted).

In addition, the ALJ determined that the RFC as formulated would accommodate Plaintiff's alleged limitations. Tr. 22. The RFC restricts Plaintiff to light work and contemplates that she can lift/carry 10 pounds frequently and 20 pounds occasionally, stand or walk for two hours and sit for six hours, and occasionally climb stairs/ramps, stoop, crawl, kneel, or crouch. Tr. 21. The RFC restricts her to very quiet workspaces, expects that she can complete repetitive tasks and adapt to routine changes involving simple, repetitive work, and restricts her contact with others. Tr. 21. In these ways, the RFC addresses Plaintiff's complaints and mirrors many of her daily activities. The RFC addresses her complaints of anxiety and social phobia by limiting her interaction with co-workers, supervisors, and the general public. Tr. 21. Accordingly, Plaintiff's alleged limitations do not call for a more restrictive RFC than set forth by the ALJ.

*2. Conservative Treatment*

The ALJ found Plaintiff's conservative level of treatment was inconsistent with the alleged severity of her impairments. Tr. 25. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset"). Here, the ALJ noted that, "even with worsened symptoms," treatment providers did not recommend surgery and opted for more conservative treatment. Tr. 25 (citing Tr. 748 ("At this time [Plaintiff] would like to be referred to physical medicine to help manage her pains non-operatively. Weight loss would be necessary before surgery could be considered.")). However, while the ALJ identified a medical record indicating Plaintiff's treating physician recommended physical therapy over surgery, the ALJ failed to note that surgery was not deemed a feasible option due to Plaintiff's weight. The same medical record states, "elective surgery should be limited to individuals with a BMI of less than 40," and records Plaintiff's BMI as 52.08. Tr. 747-48. Likewise, Dr. Chang stated, "in view of her obesity, she is not a surgical

candidate for my practice." Tr. 754. Because surgery was neither recommended

or sanctioned by Plaintiff's doctors due to her weight, the doctors'

recommendation of more conservative treatment (*i.e.*, physical therapy/aquatic

therapy) was not a clear and convincing reason to discredit her symptom

testimony. Nevertheless, this error is harmless where, as discussed *supra*, the ALJ

provides additional reasons, supported by substantial evidence, for discrediting

Plaintiff's symptom complaints. *See Carmickle,* 533 F.3d at 1162-63; *Molina*, 674

F.3d at 1115.

### 3. *Improvement with Treatment*

The ALJ found that Plaintiff's mental and physical symptoms were

improving with treatment. Tr. 24. The effectiveness of medication and treatment

is a relevant factor in determining the severity of a claimant's symptoms. 20

C.F.R. §§ 416.929(c)(3) (2011); *Tommasetti*, 533 F.3d at 1040 (a favorable

response to treatment can undermine a claimant's complaints of debilitating pain or

other severe limitations). As to her mental impairments, the ALJ found Plaintiff's

treatment records demonstrated her reported symptoms improved with therapy. Tr.

23. The ALJ noted that, during therapy sessions, Plaintiff cried "out of happiness

of the positive progress she's made in her life," and expressed gratitude for lessons

she learned from therapy, Tr. 547; that she reported "overall she feels as if she is

doing well" and believes she is "managing [her] depression and anxiety pretty

well," Tr. 549; and that she demonstrated an ability to "keep some type of balance" amidst stressful events, Tr. 559. In addition, the ALJ noted Plaintiff's self-reported PHQ-9 scores "steadily decreased with counseling," Tr. 23 (citing Tr. 542, 544, 547, 551, 553, 555-560) as recognized by her counselor. *See* Tr. 555 (treatment note indicates PHQ-9 scores are below threshold for the third time in a row). The ALJ noted Plaintiff indicated only "mild" depression symptoms[3] in January, June, and July of 2017. Tr. 23. Plaintiff contends the treatment records chosen are not representative of the record as a whole and that the ALJ failed to acknowledge the PHQ-9 scores waxed and waned over time. ECF No. 15 at 7; ECF No. 19 at 2. However, while Plaintiff's symptoms naturally waxed and waned over time, *see* Tr. 367, 388, 407, 559, 557, 556, 555, 553, 542, 549, 660, 547, 649 (PHQ-9 scores chronologically from November 9, 2015 to July 26, 2017: 14, 11, 11, 10, 12, 7, 11, 8, 3, 3, 11, 10, 11, 8, 4, 5), they were consistently better than when she started treatment. *See* Tr. 544 (recording PHQ-9 score of 14). Moreover, as noted by the ALJ, Plaintiff herself reported significant progress during treatment sessions and acknowledged that she benefitted from therapy. *See* Tr. 547, 549, 551, 553, 555,

_____

[3] The following diagnoses follow total PHQ-9 scores: minimal depression (0-4); mild depression (5-9); moderate depression (10-14); moderately severe depression (15-19); severe depression (20-27).

ORDER - 17

558, 559.  On this record, there is substantial evidence supporting the ALJ's finding that Plaintiff's mental health symptoms improved with treatment.  This constitutes a clear and convincing reason to give less weight to Plaintiff's symptom testimony.

The ALJ similarly found Plaintiff's physical symptoms improved with treatment.  Tr. 24.  The ALJ noted, and the record corroborates, that Plaintiff reported that her pain decreased as a result of taking meloxicam, Tr. 649, 651; that her pain decreased with physical therapy and exercises, Tr. 527, 529, 537; and that she benefited in mobility and pain management from aquatic therapy, Tr. 528, 533, 538.  Plaintiff contends the "testimony of relatively improved symptoms is not substantial evidence contradicting her allegations or the opinions of her treating providers."  ECF No. 15 at 8.  However, as noted above, the record demonstrates Plaintiff consistently showed improved symptoms following treatment.  The ALJ reasonably concluded Plaintiff's symptom testimony was inconsistent with her improvement with treatment.  This was a clear and convincing reason to find Plaintiff's subjective symptom testimony less credible.

### 4. Inconsistency with Objective Medical Evidence

The ALJ found the objective medical evidence was inconsistent with the alleged severity of Plaintiff's limitations.  Tr. 24.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the

ORDER - 18

symptoms alleged is not supported by objective medical evidence. *Rollins,* 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 416.929(c)(2). As to Plaintiff's mental impairments, the ALJ found that treatment records documented some of the symptoms that Plaintiff alleged, but that overall, the evidence demonstrated that Plaintiff's depression and anxiety are not as severe and limiting as alleged. Tr. 23. The ALJ noted that the "record contains multiple instances in which the claimant's mental status appeared normal," and noted that Plaintiff generally presented as "calm, cooperative, appropriate, and/or even with a 'happy' mood and affect during office visits." Tr. 23 (citing Tr. 547, 553, 555, 558, 657, 666, 676, 683, 708). Additionally, the ALJ noted that Plaintiff demonstrated "normal attitude, behavior, stream of mental activity, speech, content of thought, mood, affect, intellectual functioning, memory, fund of knowledge, concentration, and judgment during a consultative psychological evaluation in February 2016. Tr. 23 (citing Tr. 413-14). Plaintiff contends the ALJ cherry-picked therapy sessions where she presented in "good spirits," and that the record contains more sessions indicating abnormalities. ECF No. 15 at 9. The ALJ must consider all relevant evidence in the record and may not point to only those portions of the records that bolster her findings. *See, e.g., Holohan v. Massanari*,

246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Here, rather than disregarding records, the ALJ acknowledged and considered that some records indicated depression and anxiety symptoms, *see* Tr. 23, and formulated Plaintiff's RFC accordingly. Tr. 21. Plaintiff's argument that there were more sessions where she presented as depressed/anxious speaks only to the frequency and not to the severity of the symptoms (and ultimately the impairments), which the ALJ reasonably concluded was less severe than alleged. Based on the record, the ALJ's interpretation is rational and supported by substantial evidence; this was a clear and convincing reason to find Plaintiff's testimony less credible.

The ALJ also found the medical evidence was inconsistent with the alleged severity of Plaintiff's physical impairments. Tr. 24. The ALJ noted that, despite Plaintiff's complaints, multiple records indicated normal gait/muscle tone and showed no signs of neurological deficits, Tr. 649-83; that Plaintiff's low back radiation did not go down to her feet very often, Tr. 670; that Plaintiff sometimes endorsed tenderness around her SI joint, hip, and buttocks, and other times denied it, Tr. 655, 666; that Plaintiff took ibuprofen only as needed for back pain, Tr. 388; that Plaintiff was "ambulating weight bearing without any difficulty," Tr. 424; and that, upon diagnosis and treatment of her diabetes, Plaintiff had improved blood sugar levels and no reports of significantly limiting symptoms, Tr. 488. In

addition, the ALJ noted that when Plaintiff's back symptoms did appear to worsen, they were successfully managed, as discussed *supra*, by conservative treatment. Tr. 24. Despite Plaintiff's arguments to the contrary, *see* ECF No. 15 at 10, objective evidence in the record supports the ALJ's findings. *See* Tr. 390 (mild multilevel spondylosis without significant neural foraminal narrowing or central canal stenosis); Tr. 419 (imaging results show small protrusion of L1-L2 disc with remainder appearing unremarkable); Tr. 486 (no gross fracture or dislocation of hips observed); Tr. 488 (diabetes under good control). While a different interpretation of the medical evidence could be made, the ALJ's interpretation that the objective evidence was inconsistent with Plaintiff's complaints of disabling symptoms is rational and supported by substantial evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (recognizing that when evidence in the record is subject to more than one rational interpretation, the court defers to the ALJ's finding). These findings, coupled with the other reasons articulated, provided clear and convincing reasons to give less weight to Plaintiff's subjective symptoms complaints.

### B. Medical Opinion Evidence

Plaintiff contends the ALJ improperly weighed the medical opinions of M. Gabriela Mondragon, LCSW, Morgan Liddell, M.D., Rita Flanagan, Ph.D., Steven

Haney, M.D., Jeremiah Crank, M.D, Raylee Weaver-Jensen, PA-C, and Marybeth

Wheeler, ARNP. ECF No. 15 at 12-18; ECF No. 19 at 4-8.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

but who review the claimant's file (nonexamining or reviewing physicians)."

*Holohan*, 246 F.3d at 1201-02. "Generally, a treating physician's opinion carries

more weight than an examining physician's, and an examining physician's opinion

carries more weight than a reviewing physician's." *Id*. "In addition, the

regulations give more weight to opinions that are explained than to those that are

not, and to the opinions of specialists concerning matters relating to their specialty

over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may

reject it only by offering "clear and convincing reasons that are supported by

substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th

Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

ORDER - 22

may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (*citing Lester*, 81 F.3d at 830-31).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim*, 763 F.3d at 1161 (alteration in original); *see* 20 C.F.R. § 416.902 (acceptable medical sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists. 20 C.F.R. § 416.927(f). An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion. *Ghanim*, 763 F.3d at 1161.

### Medical Opinions on Mental Functioning

1. *M. Gabriela Mondragon, LCSW*

Ms. Mondragon, Plaintiff's treating therapist, submitted opinions in November 2015, October 2016, and May 2017. Tr. 449-52, 462-65, 504-07. In her November 2015 opinion, she diagnosed Plaintiff with Major Depressive Disorder Recurrent Mild, found that the disorder would affect her ability to work (enabling 1-10 hours of work/week), and would likely limit her for at least 12

months.  Tr. 449-50.  She determined Plaintiff's difficulty regulating emotions and tearful affect could pose difficulties interacting with others and completing tasks. Tr. 449.  In October 2016, Ms. Mondragon noted similar concerns, but increased Plaintiff's ability to work to 11-20 hours per week and indicated that the condition would likely limit Plaintiff's ability to work for six months.  Tr. 462-63.  In May 2017, Ms. Mondragon reported the same findings, i.e., that Plaintiff was limited to 11-20 hours of work/week and would likely be limited for six months.  Tr. 505. The ALJ gave little weight to Ms. Mondragon's opinions.  Tr. 27.

Plaintiff argues that the ALJ improperly discounted Ms. Mondragon's opinions.  ECF No. 15 at 13-14; ECF No. 19 at 5.  Because Ms. Mondragon is considered a nonacceptable medical source, the ALJ was required to give germane reasons to discount the opinions.  *Ghanim*, 763 F.3d at 1161.  First, the ALJ found Ms. Mondragon's opinions were "inconsistent with the claimant's treatment history," given the mild nature of Plaintiff's symptoms and Ms. Mondragon's prior representations of improvement.  Tr. 27.  A medical opinion may be rejected if it is unsupported by medical findings, *see Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195, or inconsistent with a medical source's prior records or notes.  *Molina*, 674 F.3d at 1112 (finding a nonacceptable medical source's opinion was properly discounted on the basis that it conflicted with her earlier assessment of the plaintiff); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (finding a

treating physician's opinion was properly discredited on basis that it was inconsistent with his treatment notes). In support of her finding, the ALJ noted that Plaintiff's treatment history showed relatively mild symptoms (largely managed throughout the adjudicatory period by over-the-counter medication) and that Ms. Mondragon had reported that Plaintiff's symptoms were improving, and her depression and anxiety were becoming milder. Tr. 27. The record supports the ALJ's findings. For example, in October 2016, Ms. Mondragon noted that Plaintiff presented with a low PHQ-9 score of 3 and that it was the third session in a row where such scores were below the threshold; she noted that she discussed graduating from therapy services early with Plaintiff. Tr. 555. In January 2017, Ms. Mondragon noted that Plaintiff had started community college classes and was "doing well" so far; she noted that Plaintiff was happy and maintained a low PHQ-9 score of 3. Tr. 553. In April 2017, Ms. Mondragon noted that Plaintiff's PHQ-9 score, even when upset, was low compared to when she started therapy, that she was set to graduate from her community college program in June 2017, and that her relationship with her daughter had improved significantly. Tr. 551. Finally, Ms. Mondragon's three opinions indicated improvement over time as she increased the hours Plaintiff could participate in work and decreased the estimated duration of the limitations. *See* 449-50, 462-63, 504-05. The inconsistency between Ms. Mondragon's treatment notes, which documented substantial improvement, and the

limitations assessed in her opinions constituted a germane reason to give the opinions less weight.

Second, the ALJ gave little weight to the opinions because Ms. Mondragon "at one point" opined Plaintiff's symptoms would persist for only six months. Tr. 27. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20 C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months); *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming the ALJ's finding that treating physicians' short-term excuse from work was not indicative of "claimant's long-term functioning"). In her first opinion, Ms. Mondragon opined that Plaintiff's symptoms would persist for at least twelve months. Tr. 450. Accordingly, Ms. Mondragon's first opinion satisfied the durational requirement, and this was not a germane reason to discredit the opinion. In her second and third opinions, authored within seven months of each other, Ms. Mondragon opined that Plaintiff's symptoms would persist for six months. Tr. 463, 505. These opinions, which are substantially similar, and which occurred in close succession, together form a continuous period of twelve months and thus satisfy the durational requirement. Nonetheless, the error is harmless because the ALJ provided another germane reason to discount the opinions. *Molina,* 674 F.3d at 1115.

ORDER - 26

*2. Morgan Liddell, M.D.*

On February 20, 2016, Dr. Liddell performed a consultative psychological evaluation. Tr. 411. She diagnosed Plaintiff with methamphetamine/alcohol use disorders in sustained remission, unspecified mood/anxiety disorders, and borderline personality disorder traits. Tr. 415. She ultimately concluded that Plaintiff does not have a psychiatric disorder that would impair her ability to work and that symptoms from the diagnosed disorders would likely improve within 12 months of standard care treatment. Tr. 415. The ALJ gave great weight to Dr. Liddell's evaluation. Tr. 26.

Plaintiff faults the ALJ for affording great weight to Dr. Liddell's opinion. ECF No. 15 at 13. An ALJ must set forth specific, legitimate reasons for crediting one medical opinion over a conflicting opinion. *Garrison*, 759 F.3d at 1012-13; *Lester*, 81 F.3d at 831. Here, the ALJ provided several reasons for crediting Dr. Liddell's opinion over the conflicting and discounted opinions of Ms. Mondragon, who is considered an other source. First, the ALJ found that Dr. Liddell's conclusion that Plaintiff "has few mental functional limitations," was consistent with Plaintiff's presentation at the evaluation. Tr. 26. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn*, 495 F.3d at 631.  During the

evaluation with Dr. Liddell, Plaintiff was observed to have adequate intellectual

functioning/sensorium, Tr. 414, fair insight into her mental health difficulties, Tr.

415, and an adequate stream of mental activity/speech and content of thought, Tr.

414.  She was cooperative, disclosing, and attentive, and she exhibited a happy and

stable mood.  Tr. 413-14.  The ALJ reasonably found that the characteristics that

Plaintiff displayed during her evaluation were consistent with Dr. Liddell's

opinions, including that Plaintiff would be able to interact with coworkers, accept

instructions from supervisors, and manage usual stress encountered in the

workplace.  Tr. 415.  This was a legally sufficient reason to credit to Dr. Liddell's

opinion.

Second, the ALJ found that Dr. Liddell's opinion was consistent with

Plaintiff's reported daily activities.  Tr. 26.  The ALJ may consider a claimant's

activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  Here, as

discussed in detail *supra*, Plaintiff's ability to complete community college classes

and earn a criminal justice certificate, her consistent attendance at narcotics

anonymous meetings (once every two weeks and meeting with her sponsor twice

weekly), and her ability to be the caretaker for her baby, plan and prepare daily

dinners, shop weekly for groceries, do the "washing, drying, folding, and putting

away the clothes," *see* Tr. 413, were reasonably interpreted by the ALJ to detract

from the severity of the mental impairments she alleged, and thus reasonably

interpreted to be consistent with Dr. Liddell's finding of minimal mental functional

limitations. This was a legally sufficient reason to credit Dr. Liddell's opinion.

Plaintiff also argues that the ALJ's assignment of great weight to Dr.

Liddell's opinion is inconsistent with her Step Two finding, ECF No. 15 at 13;

ECF No. 19 at 5, where she found Plaintiff's unspecified mood/anxiety disorders

were severe impairments. Tr. 18. However, the ALJ noted that, despite giving Dr.

Liddell's opinion great weight, she nonetheless provided some mental limitations

in light of Plaintiff's subjective symptom complaints and reported pain. Tr. 26.

This is consistent with the ALJ's position, which informed her formulation of the

RFC, that the treatment records reflected some of Plaintiff's symptoms relating to

her anxiety. *See* Tr. 23 (acknowledging that Plaintiff had to "coach herself" to "get

out and do life"). Moreover, the ALJ also gave great weight to the opinions of Dr.

Haney and Dr. Flanagan, discussed *infra*, both which opined moderate limitations.

Accordingly, the ALJ's decision to afford great weight to Dr. Liddell's opinion

was not irreconcilably inconsistent with her Step Two findings.

   *3. Steven Haney, M.D., and Rita Flanagan, Ph.D.*

   Dr. Haney reviewed Plaintiff's medical records and opined a mental RFC

assessment on March 8, 2016. Tr. 115-16. He found Plaintiff did not have

significant limitations in remembering locations and work-like procedures or

ORDER - 29

understanding and remembering short and simple instructions but was markedly

limited in her ability to understand and remember detailed instructions.  Tr. 115.

He found Plaintiff was moderately limited in her ability to interact with the public

so that only "occasional superficial interactions" would be appropriate.  Tr. 116.

On May 24, 2016, Dr. Flanagan conducted a similar assessment.  Tr. 130-32.  She

also found moderate limitations in Plaintiff's ability to understand, remember, and

carry out detailed instructions, as well as Plaintiff's ability to interact appropriately

with the general public.  Tr. 130-31.  She noted that Plaintiff would be able to

relate with coworkers and supervisors if contact were minimal.  Tr. 132.

Moreover, she found that Plaintiff was moderately limited in her ability to respond

appropriately to changes in the work setting, but that she could adapt to routine

changes and make simple plans.  Tr. 132.  The ALJ gave both opinions great

weight, with slightly greater weight given to Dr. Flanagan's opinion due to its

increased specificity.  Tr. 26.

Plaintiff summarily asserts that the ALJ erred in relying on the opinions of

nonexamining physicians.  ECF No. 15 at 13.  Because Plaintiff fails to

substantively challenge the ALJ's decision, any challenge is waived.  *See*

*Carmickle*, 533 F.3d at 1161 n.2 (determining Court may decline to address on the

merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th

Cir. 1998) (the Court may not consider on appeal issues not "specifically and

distinctly argued" in the party's opening brief).  However, the Court conducted an independent review of the ALJ's decision and finds that it is supported by substantial evidence in the record.

An ALJ must set forth specific, legitimate reasons for crediting one medical opinion over a conflicting opinion.  *Garrison*, 759 F.3d at 1012-13; *Lester*, 81 F.3d at 831.  Here, the ALJ gave several reasons for crediting the similar opinions of Dr. Haney and Dr. Flanagan over the conflicting and discounted opinions of Ms. Mondragon.  Tr. 26.  First, the ALJ found both opinions were consistent with the medical evidence indicating minimal mental health limitations, particularly in light of Plaintiff's improvement with treatment.  Tr. 26.  The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion.  *Orn*, 495 F.3d at 631.  Dr. Haney's and Dr. Flanagan's opinions identified mild and moderate limitations resulting from Plaintiff's mental impairments.  *See* Tr. 115-16; Tr. 130-32.  These limitations are consistent with those identified by the ALJ throughout the record and incorporated into the RFC, *see* Tr. 23 (ALJ acknowledging medical records indicating symptoms of anxiety and depression), as well as the documented improvement of Plaintiff's mental symptoms with treatment discussed *supra*.  This was a specific and legitimate reason to credit the opinions.

Second, the ALJ found the opined limitations in both opinions were consistent with Plaintiff's reported daily activities. Tr. 26. The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins*, 261 F.3d at 857. As discussed *supra*, Plaintiff's reported activities are well documented throughout the record and include her ability to attend college courses in person and care/arrange childcare for her children. Tr. 26. The level of functioning required to perform such activities was reasonably interpreted to be consistent with the minimal mental limitations asserted by both Dr. Haney and Dr. Flanagan.

Overall, the ALJ did nor err in crediting the opinions of Dr. Haney and Dr. Flanagan over the opinions of Ms. Mondragon.

### Medical Opinions on Physical Functioning

*1. Jeremiah Crank, M.D.*

Dr. Crank, Plaintiff's treating physician, submitted a medical statement in December 2016. Tr. 466-68. He opined that, due to her lower back/hip pain and wrist pain, Plaintiff would be limited to sedentary work and would only be able to work 1-10 hours per week and that her depression and social anxiety would impact her ability to work. Tr. 466-67. Dr. Crank indicated the limitations identified would be temporary but stated that the duration was unknown. Tr. 467. The ALJ gave little weight to Dr. Crank's opinion that Plaintiff would be limited to sedentary work. Tr. 27. Because Dr. Crank's opinion was contradicted by Dr.

Virgi's opinion, Tr. 128-30 (opining Plaintiff was capable of light work), the ALJ was required to provide specific and legitimate reasons supported by substantial evidence" to discount the opinion. *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-831).

First, the ALJ discounted the opinion because the ALJ concluded that Dr. Crank relied on Plaintiff's self-reports rather than objective findings. Tr. 27. A physician's opinion may be rejected if it is based on a claimant's subjective complaints, which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604. However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion. *Ghanim*, 763 F.3d at 1162; *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). As discussed *supra*, the ALJ gave legally sufficient reasons for discounting Plaintiff's symptom testimony. Plaintiff argues the ALJ unreasonably concluded that Dr. Crank "relied heavily" on Plaintiff's self-reports. ECF No. 15 at 15. However, the ALJ's detailed observations about the inconsistencies between Plaintiff's reported daily activities and her alleged limitations, coupled with the brevity of the explanations and evidence provided in Dr. Crank's opinion, led the ALJ to reasonably conclude that Dr. Crank's opinion relied on self-reports which had been discredited. Tr. 27. For example, Dr. Crank opined Plaintiff's impairments result

in her limited access to services, with the sole explanation being, "due to depression [and] social anxiety." Tr. 467. Plaintiff's daily activities and the record at large do not support that her mental impairments limit her from accessing services. *See*, *e.g.*, Tr. 398-408 (successfully accessing treatment); Tr. 54-55 (attending recovery meetings). Similarly, Dr. Crank determined Plaintiff had limitations standing, sitting, concentrating, interacting with people, completing applications, keeping appointments, and using transportation because "pain of back/hips/wrists limits walking [and] moving." Tr. 466-67. However, as the ALJ acknowledged, many of Plaintiff's reported daily activities required such actions. *See, e.g.*, Tr. 53-54, Tr. 58-59 (describing community college courses, which included in-class group work and independent work); Tr. 413 (Plaintiff reports preparing meals, shopping for groceries, taking care of her baby, doing the laundry, and attending recovery meetings multiple times per week). When viewed in light of the whole record, the limitations opined by Dr. Crank were reasonably interpreted by the ALJ to be primarily based on self-reported symptoms, rather than on objective or clinical evidence. Accordingly, this was a specific and legitimate reason to discount Dr. Crank's opinion.

Second, the ALJ noted that Dr. Crank indicated Plaintiff's limitations would not be permanent but gave no expected duration. Tr. 27. Temporary limitations are not enough to meet the durational requirement for a finding of disability. 20

ORDER - 34

C.F.R. § 416.905(a) (requiring a claimant's impairment to be expected to last for a continuous period of not less than twelve months). Dr. Crank's opinion failed to provide an estimate as to how temporary Plaintiff's limitations would be. As such, the Court, as well as the ALJ, are unable to determine whether the opinion posits the limitations will last over 12 months. Dr. Crank's failure to provide a temporal estimate regarding Plaintiff's limitations was a specific and legitimate reason to discount Dr. Crank's opinion.

### 2. Raylee Weaver-Jensen, PA-C

Ms. Weaver-Jensen submitted an opinion in October 2016. Tr. 445-48. She determined Plaintiff would be unable to participate in any work, that she was severely limited (unable to lift at least 2 pounds or unable to stand or walk), and that "any lifting or prolonged sitting or standing is likely to exacerbate her disc disease." Tr. 445-46. The ALJ gave her opinion little weight. Tr. 27.

Because Ms. Weaver-Jensen is considered a nonacceptable medical source, the ALJ was required to give reasons germane to the opinion to discount the opinion. *Ghanim*, 763 F.3d at 1161. First, the ALJ found that the opinion was "overstated in the context of the claimant's conservative treatment." Tr. 27. An ALJ may discount a physician's opinion that is inconsistent with the conservative nature of the claimant's treatment. *Rollins*, 261 F.3d at 856; *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Garrison*, 759 F.3d at 1015. However, as

ORDER - 35

discussed *supra*, Plaintiff's conservative treatment pertaining to her physical

impairments resulted partly due to her weight. *See* Tr. 748, 754. The conservative

treatment measures were recommended because surgery was not feasible. That

Plaintiff was conservatively treated, in light of this fact, is not a germane reason to

discredit Ms. Weaver-Jensen's opinion. However, any error is harmless because

the ALJ provided a separate germane reason discussed *infra*. *See Carmickle,* 533

F.3d at 1162-63; *Molina,* 674 F.3d at 1115.

Second, the ALJ found the opinion was inconsistent with Plaintiff's daily

activities. Tr. 27. An ALJ may discount a medical source opinion to the extent it

conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec.

Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Plaintiff's daily activities, discussed

in detail throughout the ALJ's opinion (including caring for her baby, driving,

attending classes and meetings, shopping, and doing household chores), were

reasonably determined by the ALJ to be inconsistent with the level of physical

limitation presented in Ms. Weaver-Jensen's opinion, namely that Plaintiff could

not lift 2 pounds or walk or stand and that she could not participate in any activity

without exacerbating her symptoms. *See* Tr. 445. This was a germane reason to

discredit the opinion.

Third, the ALJ gave no weight to Ms. Weaver-Jensen's opinion that Plaintiff

was "disabled," finding that such an issue is "reserved to the Commissioner." Tr.

27. Plaintiff contends Ms. Weaver-Jensen did not find Plaintiff was disabled, but merely recommended she should not participate in any work activity. ECF No. 15 at 16. A statement by a medical source that a claimant is "unable to work" is not a medical opinion and is not due "any special significance." 20 C.F.R. § 416.927(d). Nevertheless, the ALJ is required to consider medical source opinions about any issue, including issues reserved to the Commissioner, by evaluating the opinion in light of the evidence in the record and applying the applicable 20 C.F.R. § 416.927(d) factors. SSR 96-5p at *2-3. Here, Ms. Weaver-Jensen indicated Plaintiff should be limited to zero hours of work per week. Tr. 445. In light of Plaintiff's reported daily activities, improvement with treatment, and relatively mild objective evidence, as discussed by the ALJ throughout her opinion, Ms. Weaver-Jensen's opinion is inconsistent with the record. The ALJ did not err in discounting Ms. Weaver-Jensen's opinion.

### 3. Marybeth Wheeler, ARNP

Ms. Wheeler completed a medical report in September 2017. Tr. 724-25. Ms. Wheeler diagnosed Plaintiff with chronic low back pain, DMII, Gerd, and obesity. Tr. 724. She found that full-time work would exacerbate Plaintiff's back pain, that Plaintiff would need to lie down intermittently due to her back, and that Plaintiff would likely miss "some work" as a result of her impairments. Tr. 724-25. Ms. Wheeler did not specify how many days she believed Plaintiff would miss

per month and instead wrote "unknown." Tr. 725. She also noted Plaintiff's pain would improve with weight loss. Tr. 725. The ALJ gave little weight to Ms. Wheeler's opinion.

Because Ms. Wheeler is considered a nonacceptable medical source, the ALJ was required to give reasons germane to the opinion to discount the opinion. *Ghanim*, 763 F.3d at 1161. First, the ALJ found Ms. Wheeler's opinion regarding Plaintiff's ability to work was inconsistent with Plaintiff's treatment history and "positive response to physical therapy and therapeutic exercises." Tr. 27. Effectiveness of treatment is a germane reason to reject a medical opinion. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Plaintiff does not offer further argument regarding this finding and rests on her earlier argument that the record shows only relative improvement and lacks substantial evidence of improvement. *See* ECF No. 15 at 8, 17. As discussed in detail *supra*, the record supports the ALJ's conclusion that Plaintiff's physical symptoms and pain improved with treatment. *See, e.g.*, Tr. 527-29, 537-38. This substantial evidence, coupled with Ms. Wheeler's own finding that Plaintiff's pain would improve with weight loss, demonstrates inconsistency with her opinion that Plaintiff's condition would deteriorate with regular work and that Plaintiff would miss work. Tr. 725. This was a germane reason to discredit the opinion.

Second, the ALJ found Ms. Wheeler's opinion was inconsistent with Plaintiff's reported activities. Tr. 27. Inconsistency between an opinion and a claimant's daily activities constitutes a germane reason to reject the opinion. *Belcher v. Berryhill*, 707 F. App'x 439 (9th Cir. 2017). As discussed *supra*, Plaintiff's daily activities, including attending community college classes, taking care of her young child, driving, and attending multiple weekly meetings, were reasonably deemed to be inconsistent with Ms. Wheeler's assessment of Plaintiff's physical limitations. Consequently, this was a germane reason to discredit the opinion.

Finally, the ALJ found Ms. Wheeler's opinion was inconsistent with Plaintiff's "treatment history." Tr. 27. To the extent that the ALJ found that the opinion was inconsistent with the conservative nature of the treatment, that finding would constitute harmless error for the same reason discussed *supra* – the conservative treatment measures were recommended, in part because surgery was not feasible due to Plaintiff's weight. Any error would be harmless because the ALJ provided other germane reasons to discount the opinion. *See Carmickle,* 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115.

**C. Lay Opinion Evidence**

Plaintiff also challenges the ALJ's treatment of statements provided by Ms. Boggess, Plaintiff's mother. ECF No. 15 at 18; ECF No. 19 at 5-6. An ALJ must

consider the statements of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness evidence cannot establish the existence of medically determinable impairments, but lay witness evidence is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay witness statements are rejected, the ALJ "must give reasons that are germane to each witness." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

Ms. Boggess completed two Third Party Function Reports (December 2015 and April 2016). Tr. 288-96; Tr. 317-25. In her first function report, Ms. Boggess noted Plaintiff "deals with pain daily," that her impairments have caused her to stop doing "most if not all normal things" she used to do, that her abilities to clean/cook, take care of her baby, shop/go outside are dependent on her pain level, and that she "used to be a social butterfly," but now suffers from "social phobia and PTSD." Tr. 289-96. In her second report, Ms. Boggess added that Plaintiff cannot stand or sit for very long due to arthritis, making it difficult to work. Tr. 318. She also indicated that since Plaintiff obtained her driver's license and a car,

she no longer spends much time with her.  Tr. 318.  The ALJ gave little weight to Ms. Boggess' reports.  Tr. 27.

First, the ALJ rejected Ms. Boggess' reports because she admitted that she was unsure of Plaintiff's daily activities and had "stopped spending much time with her." Tr. 27; *see also* Tr. 290, 318-25.  An ALJ may reject the testimony of a lay witness who does not observe the claimant's functional capacity.  *Valentine*, 574 F.3d at 694.  Plaintiff failed to address or challenge this reason in her opening brief, *see* ECF No. 15 at 18.  On reply, Plaintiff addresses the ALJ's finding for the first time, arguing that Ms. Boggess adequately observed Plaintiff's functional capacity at the time of her first report and conceding that the she did have knowledge of Plaintiff's activities at the time of the second report.  ECF No. 19 at 5-6.  As such, Ms. Boggess' lack of firsthand knowledge was a germane reason to reject her reports.

Second, the ALJ found that Ms. Boggess' statements "do not establish a basis for a more restrictive RFC."  Tr. 27.  Plaintiff contends that Ms. Boggess' statement, "arthritis alone makes it hard to work. Because you can't stand or sit for very long," Tr. 318, demands a more restrictive RFC.  ECF No. 15 at 18.  Because the ALJ provided a legally sufficient reason to discount Ms. Boggess' reports, as discussed above, the ALJ was not required to incorporate the statements within the reports into the RFC.  *See Viles v. Colvin*, No. 3:14-CV-0534-SI, 2015 WL

1393296, at *10 (D. Or. Mar. 25, 2015) (citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001) ("Only limitations supported by substantial evidence must be incorporated into the RFC."); *see also Archer v. Comm'r of Soc. Sec.*, No. 6:12-CV-00767-SI, 2013 WL 3353775, at *13 (D. Or. July 2, 2013), *aff'd sub nom. Archer v. Colvin*, 618 F. App'x 343 (9th Cir. 2015) (noting that, because the court rejected the plaintiff's challenges to the ALJ's treatment of her credibility, the medical evidence, and the lay witness testimony, the plaintiff failed to establish that the ALJ erroneously omitted any limitations from the RFC). Plaintiff has not identified any error in the ALJ's interpretation of the lay evidence. *See Valentine*, 574 F.3d at 694 (ALJ may reject lay testimony that essentially reproduces the claimant's discredited testimony).

**D. Step-Five Analysis**

Plaintiff argues that the ALJ erred at step five. ECF No. 15 at 18-21; ECF No. 19 at 8-9. At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 416.960(c)(2); *Beltran*, 700 F.3d at 389. Here, based on the testimony of the vocational expert (VE), the ALJ found Plaintiff would be able to perform the following jobs: assembler, escort vehicle driver, and document preparer. Tr. 28.

Plaintiff contends, and Defendant concedes, that a conflict exists between the RFC's restriction to "simple, repetitive tasks," and a document preparer's required use of Level 3 Reasoning. ECF No. 15 at 18-19; ECF No. 18 at 15. The Ninth Circuit has held that an apparent conflict exists between the RFC to perform simple, repetitive tasks and the demands of Level 3 Reasoning. *Zavalin*, *v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015). "[W]hen there is an apparent conflict between the vocational expert's testimony and the DOT… the ALJ is required to reconcile the inconsistency." *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (citing *Zavalin,* 778 F.3d at 846). The ALJ has an affirmative duty to "ask the expert to explain the conflict and 'then determine whether the vocational expert's explanation for the conflict is reasonable' before relying on the expert's testimony to reach a disability determination." *Rounds*, 807 F.3d at 1003.

Here, the VE testified Plaintiff could work as a document preparer (requiring Level 3 Reasoning), even though the RFC mandated simple, repetitive task work. Tr. 21, 67. The ALJ did not expressly inquire or comment on the conflict between the job and the RFC. Accordingly, the ALJ erred by failing to recognize and adequately reconcile the conflict. *See Wyatt v. Berryhill*, No. 317CV05214RSMDWC, 2017 WL 6888857, at *2 (W.D. Wash. Dec. 22, 2017), *report and recommendation adopted*, No. 3:17-CV-05214-RSM, 2018 WL 369697 (W.D. Wash. Jan. 11, 2018) (an ALJ errs if she does not ask the VE to explain how

a claimant limited to simple, routine tasks can nevertheless perform occupations requiring Level 3 Reasoning). Nonetheless, the Court may not reverse an ALJ's decision on account of an error that is harmless. *Molina*, 674 F.3d at 1111. Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *See Simpson v. Berryhill*, 717 F. App'x 670, 673 (9th Cir. 2017). In this case, the ALJ also found Plaintiff could perform the occupations of assembler (Level 1 Reasoning) and escort vehicle driver (Level 2 Reasoning). Tr. 28. The number of jobs available on the national economy for assembler (250,000 jobs) and escort vehicle driver (200,000 jobs) are significant. Although the ALJ erred on the occupation of document preparer, this error was harmless. *See Molina*, 674 F.3d at 1115 (error is harmless if it does "not alter the ALJ's decision").

Next, Plaintiff argues the ALJ lacked substantial evidence to support her finding that Plaintiff could work as an assembler based on the VE's testimony. ECF No. 15. At 19; ECF No. 19 at 8. Specifically, Plaintiff contends the VE inaccurately represented the number of jobs available for an assembler (250,000 jobs) by providing the number for the entire OES group (containing 1,500 titles), rather than for the individual job title. ECF No. 15 at 19-20. A VE's recognized expertise provides the necessary foundation for his or her testimony," *see Wright v. Colvin*, No. CV 12-1893-SP, 2014 WL 5456044, at *3 (C.D. Cal. Oct. 27, 2014),

*aff'd sub nom. Wright v. Berryhill*, 692 F. App'x 496 (9th Cir. 2017) (citing

*Bayliss,* 427 F.3d at 1218), and itself constitutes substantial evidence. *Id.* (citing

*Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir.1995) ("[T]he ALJ was within his

rights to rely solely on the vocational expert's testimony.")). However, where the

VE testimony is fundamentally flawed, remand is appropriate. *See, e.g., Farias v.*

*Colvin,* 519 Fed. Appx. 439, 440 (9th Cir. 2013) (remand required where VE

provided employment data for a different occupation than the one he opined

claimant could perform). Here, in response to the ALJ's hypothetical person with

the same RFC as Plaintiff, the VE testified that such a person would be able to

perform the job of an assembler, for which there are "approximately 250,000 [jobs]

in the nation, 5,000 in the state of Washington." Tr. 67. On cross-examination,

Plaintiff's counsel asked the VE for the source of her numbers.[4] Tr. 71. The VE

testified she "reviewed multiple sources, including the Bureau of Labor Statistics,

the Occupational Employment Quarterly and U.S. Publishing," and the "U.S.

Census." Tr. 71. She testified she compares numbers "based on those" sources

and that she identifies jobs and conducts labor market surveys for job analyses

---

[4] Although a VE is not required to testify as to his or her methodology, Plaintiff

raised it at the hearing. *See Wright*, 2014 WL 5456044, at *5.

also." Tr. 71. She testified that she is familiar with the numbers. Tr. 71.

Plaintiff's counsel then asked for the VE's methodology for arriving at the numbers, and the VE explained: "I review all of the DOT titles associated with that OES group and pull them out based on whether or not the position currently still exists given the date of the DOT. I evaluate the physical demands and erode the numbers based on that." Tr. 72. The VE's explanation that she reviewed multiple sources, her testimony regarding her familiarity with whittling down the numbers from the OES group, and her clear account of the methodology used provided no reason for the ALJ to question the reliability of the number of jobs she deduced. Plaintiff failed to present a fundamental flaw requiring a remand on this issue.

Finally, Plaintiff argues that based on the above alleged errors, the VE's testimony is altogether unreliable and that the ALJ failed to meet her burden of establishing the existence of substantial numbers of jobs. ECF No. 15 at 20; ECF No. 19 at 9. As discussed above, while Plaintiff showed error, albeit harmless, in regard to the document preparer position, Plaintiff did not establish error regarding the assembler position, for which the VE found 250,000 jobs nationally and 5,000 jobs in Washington. Tr. 67. This position alone establishes employment "exists in significant numbers in the national economy." 20 C.F.R. §§ 416.960(c)(2); *Beltran*, 700 F.3d at 389; *Guitierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (finding 25,000 in the national economy to be a sufficiently

significant number).  Moreover, Plaintiff's argument that the VE inaccurately estimated the number of jobs available for the escort vehicle driver position based on a lower estimate Plaintiff derived from Job Browser Pro, ECF No. 15 at 20-21, is unavailing.  Courts have consistently rejected such lay assessment of the raw vocational data derived from Job Browser Pro, and have found that such evidence does not undermine the reliability of a vocational expert's opinion.  *See*, *e.g.*, *Sarah Amanda E. v. Saul*, No. 1:18-CV-03173-FVS, 2019 WL 7817086, at *9 (E.D. Wash. Sept. 30, 2019) (noting cases that rejected arguments that Job Browser Pro data undermined vocational expert's testimony); *Ruth Kay A. v. Comm'r of Soc. Sec.*, No. 1:18-CV-3240-TOR, 2019 WL 7817084, at *7 (E.D. Wash. Sept. 3, 2019) (offer of data derived from Job Browser Pro does not undermine the vocational expert's testimony); *Colbert v. Berryhill*, 2018 WL 1187549, at *5 (C.D. Cal. Mar. 7, 2018) (concluding the ALJ properly relied on vocational expert testimony regarding job numbers where claimant argued that the expert's numbers were inflated based on Job Browser Pro estimates; noting that Job Browser Pro is not a source listed in 20 C.F.R. §§ 404.1566(d), 416.966(d), and the data therefrom served only to show that evidence can be interpreted in different ways); *Cardone v. Colvin*, 2014 WL 1516537, at *5 (C.D. Cal. Apr. 14, 2014) ("[P]laintiff's lay assessment of raw vocational data derived from Job Browser Pro does not undermine the reliability of the [vocational expert's] opinion.").  The ALJ met her

burden by establishing employment "exists in significant numbers in the national economy."  20 C.F.R. §§ 416.960(c)(2); *Beltran*, 700 F.3d at 389.  Therefore, the Court will not disturb the ALJ's step five determination.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Andrew M. Saul as the Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED March 6, 2020.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE